IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF two black Apple iPhones seized from 2402 Kanawha Terrace Apt. 202, Saint Albans, West Virginia during a search warrant on January 26, 2024 | Case No. 2:24-mj-00004 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Brandon J. Perry, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the extraction and examination of electronically stored information from an electronic communication device seized by police on January 26, 2023 during the execution of a arrest and search warrant on CARLITO HARRIS CARTER (hereinafter "CARTER") for a violation of 21 U.S.C. § 841 (Distribution of Fentanyl.) The devices are more particularly described in Attachment A and one black Apple iPhone cellular telephone with 3 rear facing cameras and 1 front facing camera in a silver case (hereinafter "SUBJECT DEVICE 1") and a black Apple iPhone with one rear facing camera and one front facing camera in white, gray, and black multi-color case (hereinafter "SUBJECT DEVICE 2" and collectively "SUBJECT DEVICES"). The electronically stored information sought under this warrant is more particularly described herein and in Attachment B. The SUBJECT DEVICES are

currently located at the Saint Albans Police Department (SAPD), 613 MacCorkle Avenue, Saint Albans, Kanawha County, West Virginia.

2. I am currently a Lieutenant with the Saint Albans Police Department's Special Enforcement Unit in Saint Albans, Kanawha County, West Virginia and an active Task Force Officer ("TFO") with the Department of Homeland Security. I have been employed by the Saint Albans Police Department for eleven years. I have been assigned to the Saint Albans Police Departments Special Enforcement Unit from 2013-2015 and the Metro Drug Enforcement Network Team (MDENT) from 2015-2018. From approximately December 2019 until present, I have been assigned to the Special Enforcement Unit as a case agent, assistant commander, and currently the commander. As a Lieutenant in the Special Enforcement Unit, I am charged with enforcing the Controlled Substances Act, Title 21, United States Code, the West Virginia Uniform Controlled Substance Act, and other duties as imposed by law. I have completed training within this field including the 2013, 2015, and 2018 West Virginia Narcotics Officers Association (WVNOA) Conference which covers various aspects of drug work including highway interdiction, knock and talks, working with informants, and other narcotics related matters. I have assisted and worked on multiple Title III drug investigations. I have attended the Drug Enforcement Administration's (DEA) Basic Narcotic Investigator course, DEA Hazardous Materials / Clandestine Methamphetamine Laboratory course, National Criminal Enforcement Association criminal patrol workshop, Criminal Patrol and Baseline Interdiction Seminar, and the International Narcotics Interdiction Association Criminal Interdiction Conference. I have also attended numerous training courses in reference to cultivating and managing confidential informants and money laundering. I have also attended training involving video surveillance techniques for narcotics investigations. During my tenure with the Saint Albans Police Department, MDENT,

and as a TFO with HSI, I have participated in numerous drug investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds, and records of drugs have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers; (d) debriefed cooperating drug traffickers; (e) conducted surveillance of individuals engaged in drug trafficking. Through my training and experience, I have become familiar with: (a) the manner and methods by which illegal drugs are imported and distributed; (b) the methods of payment for such drugs; and (c) the efforts of persons involved in such activities to avoid detection by law enforcement. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.  Among other duties, I am participating in an investigation relating to the distribution of controlled substances by CARTER, other persons known, and others yet unknown ("SUBJECTS" or "SUBJECT INDIVIDUALS").

3. During my tenure with the SAINT ALBANS POLICE DEPARTMENT, I have participated in numerous drug investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds, and records of drugs have been found; (c) reviewed and analyzed numerous recorded conversations and records of drug traffickers; (d) debriefed cooperating drug traffickers; and (e) conducted surveillance of individuals engaged in drug trafficking.  Through my training, education, and experience, I have become familiar with (a) the manner by which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

1. The SUBJECT DEVICES are more specifically described as a Black iPhone cellular telephone with 3 rear facing cameras and 1 front facing camera in a silver case and a black iPhone cellular telephone with one rear facing camera and one front facing camera in white, gray, and black multi color case. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

1. In late 2023, I was contacted by Federal Probation Officer Justin Gibson in reference to a male by the name of Carlito Harris Carter, who he supervises and lives at 2402 Kanawha Terrace 202, Saint Albans, Kanawha County, West Virginia. Officer Gibson advised that Saint Albans Police Department should investigate CARTER as his residence smells like marijuana, but CARTER passes all drug screens. Officer Gibson provided information related to CARTER'S vehicle, a black in color 2021 Jaguar SUV bearing West Virginia registration 96L919 and stated it is registered to his girlfriend, Destiny Spencer who lives at 5343 Frontier Drive, Cross Lanes, West Virginia.

2. On January 18, 2024 I spoke with a confidential informant (hereinafter referred to as CI 1). CI 1 said a male by the name of "Carlito" is selling large amounts of methamphetamine and Fentanyl. I asked CI 1 if he/she knew where "Carlito" lives. CI 1 stated "yes". CI 1 stated "Carlito" "lives in the apartments near the Ayash building". I asked CI 1 how he/she knows where "Carlito" resides. CI 1 told me he/she has been present while "Carlito" distributed Fentanyl at his residence. I asked CI 1 if he/she could show him where "Carlito" resides. CI 1 stated "yes". Captain Bass and I transported CI 1 to the area he/she described. CI 1 pointed out "Carlito's" residence,

4

2402 Kanawha Terrace 202, Saint Albans, Kanawha County, West Virginia. CI 1 also stated "Carlito" drives a black in color "fancy" new SUV style vehicle however, it was not present at the residence. The Saint Albans Police Department's Special Enforcement Unit has used information provided by CI 1 in the past. The information provided by CI 1 has led to drug seizures, search warrants, and felony drug arrests. CI 1's information is reliable and credible. Through investigative techniques, Sgt. Griffith with the Saint Albans Police Department positively identified "Carlito" as CARTER (D.O.B 08/13/1979), and confirmed he resides at 2402 Kanawha Terrace 202, Saint Albans, Kanawha County, West Virginia.

3. On January 18, 2024, Sgt. Griffith spoke to a second confidential informant (hereinafter referred to as CI 2). CI 2 stated he/she has obtained Fentanyl from CARTER within the past week. CI 2 stated the transaction took place inside of CARTER'S residence. Sgt. Griffith asked CI 2 if he/she could show me where CARTER lived. CI 2 stated "yes". Detective C.R. French of the St. Albans Police Department assisted Sgt. Griffith as they both drove the CI to the area in which he/she advised to go. CI 2 pointed out CARTER'S residence, 2402 Kanawha Terrace 202, Saint Albans, Kanawha County, West Virginia. CI 2 sent a text message to CARTER inquiring if he was in town. CARTER replied and stated, "Will be in a few". CI 2 advised CARTER that he/she had money and is "sick" (common term used by opiate users going through withdraws). CI 2 told CARTER to let him/her know when he returns. CARTER responded to CI 2 via text message on January 19, 2024, at approximately 0046 hours and stated, "Where u at".

4. On January 22, 2024, CI 2 stated he/she could purchase a quantity of suspected Fentanyl from CARTER from his residence at 2402 Kanawha Terrace 202, Saint Albans, Kanawha County, West Virginia. CI 2 provided text messages between him/her and CARTER arranging the

5

deal. CI 2 arranged to purchase a half a gram of Fentanyl in exchange for $50. CI 2 was searched and found to be free of US currency and contraband. CI 2 was dropped off in the area of CARTER'S residence where he/she purchased suspected Fentanyl inside of CARTER'S residence with the $50.00 in pre-recorded buy money. CI 2 stated he/she observed large amounts of illicit drugs (methamphetamine and Fentanyl) inside of the residence during the controlled purchase. CI 2's observations were confirmed by the body wire video. The suspected Fentanyl was field tested and yielded a positive result.

5. The information CI 2 provided about CARTER matched the information provided by CI 1. CI 2 corroborated the information he/she and CI 1 provided with text messages between CI 2 and CARTER and by conducting a controlled purchase of Fentanyl from CARTER inside of his residence. CI 2's information is reliable and credible.

6. On Tuesday January 23, 2024 Sgt. Griffith applied for and was granted a search warrant for 2402 Kanawha Terrace 202, Saint Albans, Kanawha County, West Virginia by Kanawha County Magistrate Moore.

7. On Friday January 25, 2024 CARTER and a parole absconder Jesse Rufty were arrested on a traffic stop leaving the residence. The search warrant of the residence was executed contemporaneously with the traffic stop of the vehicle occupied by CARTER and Jesse Rufty. During the search of the residence, officers located and seized approximately 333.2 grams of suspected methamphetamine weighed in packaging, 202.8 grams of suspected Fentanyl weighed in packaging, 335.8 grams of suspected marijuana weighed in packaging, and $1,695.00 in U.S. Currency. In addition to the drug evidence, officers also located and seized firearm parts and ammunition. Both SUBJECT DEVICES were located on a couch in the living room. SUBJECT

DEVICE 1 was powered off and SUBJECT DEVICE 2 was powered on when seized. During a Mirandized statement CARTER admitted to his involvement in the distribution of illicit drugs and admitted that that SUBJECT DEVICE 2 belonged to him.

8.       Based on my training, experience, and the investigation thus far as described herein, probable cause exists that the SUBJECT DEVICES contain evidence of drug distribution by CARTER. Specifically, investigators believe that evidence of drug-related communications involving CARTER, and his co-conspirators and confederates, along with photographs or other information more fully described in Attachment B, is currently located within the electronic memory of the SUBJECT DEVICES. The requested warrant will allow investigators to ascertain the relative involvement of CARTER in the illegal activities described above.

### TECHNICAL TERMS

9.       Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text

messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

10. The SUBJECT DEVICES are cellular telephones. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Certain devices utilized by the user may not be locked in the same manner and some devices will be more easily accessed by the examiner.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

11. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. The information would include but not be limited to text messages, Multimedia Messaging Service ("MMS"), and messages to or from co-conspirators on various applications like SnapChat, Instagram, and Facebook. Phone logs, usernames, GPS locations, and images are also stored on electronic devices. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

12. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is

probable cause to believe that this forensic electronic evidence is stored within the memory of the SUBJECT DEVICES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the SUBJECT DEVICES. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the electronic device was used, the purpose of its use, who used it, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether electronically stored information is evidence may depend on other information stored on the device and the application of knowledge about how electronically stored data works. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

13. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

14. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is probable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

15. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A to seek the evidence described in Attachment B.

Respectfully submitted,

*LT. B.J. Perry*

Brandon J. Perry
Lieutenant / HSI TFO
Saint Albans Police Department

Subscribed and sworn to before me by telephone pursuant to Fed. R. Crim. P. 41(d)(3)

On Feb. 16, 2024:

HONORABLE DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE